All rise. Illinois Appellate Court, third digit, is now in session. The Honorable Justice James Fitzgerald Smith is presiding. Have a seat. I'll call the case. 14-4, there were four people versus a second voter. Please step up and identify yourselves. Your Honor, my name is Patrick Jaspi with the State Department. I'm here on behalf of Justice Miller. Good morning, Your Honor. This is Assistant State Attorney Alan Spelberg on behalf of the people. A pair of KG veterans here. That's good. So it's the normal time, but it appears there's a lot to this case, so expect a lot of questions. And I expect a lot of answers because some of these things, like somebody just identified a case of my own that I didn't know was on this. So with that, you can go ahead.  Please decode. Counsel, again, my name is Patrick Jaspi. I'm here on behalf of Stephen Miller. I'd like to reserve three minutes for rebuttal, if I may. Your Honors, as you know, there are many issues in the briefs we raised before this court. I'd like to begin by focusing on ones, two of which we think negatively affected the jury's ability to consider an involuntary manslaughter verdict in this case. Issue one, the failure of the defense counsel to move to dismiss the felony murder charge and the vehicular invasion charge. And issue three, the failure of the defense counsel to argue to the jury in closing argument that involuntary manslaughter was the proper verdict. This was a case where the state's evidence showed that the acts alleged by the defendants, a kick or an attempt to kick and a punch or an attempt to punch, would not have caused death in a 27-year-old healthy person. And in fact, after these acts were committed, Mr. Abdallah was chasing Mr. Miller in pursuit of him. And so we think under these facts, if the jury hadn't been instructed on felony murder, vehicular invasion, and if counsel had argued involuntary manslaughter, they would have seen this to be that type of case. And so that's the main focus of our argument. So turning to compulsory joinder and the speedy trial principles, the state concedes that vehicular invasion should not have been brought in this case and was subject to dismissal had defense counsel moved to dismiss. In the absence of that, where is any predicate felony? In the absence of that? Is there a predicate felony? Can we say that, well, he was punching him, he kicked him, there's evidence of that. Is that a predicate felony, factually speaking? No. You've got two separate charges. Your Honor, felony murder and potential murder were brought in vehicular invasion. Vehicular invasion was a predicate felony for felony murder. Okay, but let's assume now that the state concedes that it was improvidently or untimely brought. Is there, factually speaking or legally, any other predicate felony that the state could rely upon in order to say that he's still guilty of felony murder? No, I don't believe so. I think what the vehicular invasion predicate showed is that the only other one would be aggravated battery. They charged their co-defendant with that, the guy who beat Raymond and Rahman? Yes. So we couldn't do an aggravated battery predicate felony because it's inherent in and arises out of, as of course we believe the vehicular invasion does as well. So under Morgan and Pelt, that wouldn't be permitted. But you aren't addressing my case, People v. Wales. I'm going to have to ask if you are. Were they nulling the case? And it says right in here, doesn't matter. Your Honor, I'm unfamiliar, unfortunately, with People v. Wales. Position on the underlying felony is not an element of the felony murder? Certainly. You don't perceive that, right? I don't believe so. So it's technically irrelevant. No, Your Honor. So let's step by step. The question in compulsory joiner are these new charges. So is the felony murder a new charge? This case we rely on, Quigley, Hunter, and Williams. And under those cases, that's a new charge. The State is relying solely on cases that have nothing to do with compulsory joiner. So I think that should be a big indication for this Court that they're on the wrong track. In Quigley, the original charge was a misdemeanor charge. And then a later filed aggravated misdemeanor DUI. And then a later filed aggravated DUI. And the O.S. Supreme Court said that was a new charge. It's based on the same act. It had to be dismissed, even though these are all DUI. So I think for compulsory joiner purposes, felony murder is a new charge. And I'd like to stress that the consequences in this case of bringing felony murder and intentional murder charges were severe. If you look at the earlier record, the State explains why they brought these new charges. It was to bring the possibility of a natural life sentence to bear on Mr. Noland. When he's facing known murder, he's never facing natural life. But they bring new charges. And there's a law that says if you commit a felony murder and then during it you intentionally kill someone, you are eligible for natural life. And they move for that enhancement. So these are absolutely different charges, new charges. And, of course, they later then withdrew their request for that enhancement because I think they recognize that this is not an intentional or known murder case. But it's shown in the same statute. It is the same statute. But the trial court on post-trial motion did indicate that under the one good count rule it was finding that the defendant was guilty of knowing and intentional murder. Where's the evidence for that? So I don't believe the one good count rule comes into play for a couple reasons. Okay. We know the jury convicted of vehicular invasion. They signed that verdict form. And we know the State concedes that verdict form should never have been given to the jury. So we know 12 jurors agree on that. And we don't have any indication in this record that even one juror thought the defendant was guilty on a knowing or intentional basis. And so under those circumstances, wouldn't it be natural for jurors, after they've just agreed unanimously in the jury room vehicular invasion, to just naturally go on and consider felony murder? And once they do, their job is over. They can't move on to the involuntary manslaughter that they've done. They've done what the judge has asked them to do. So I don't think, for that reason, there's any reason to engage the one good count rule. But there's another reason as well. This is an ineffective assistance claim for failure to dismiss these charges. So the prejudice inquiry is simply on a case-by-case basis whether there was a reasonable probability of a different outcome. Courts don't interpose categorical rules upon a strictly prejudiced analysis. So it's very clear that it's just case-by-case. So in this case, what was the effect of the felony murder charges? Well, it took the jury's consideration off of involuntary manslaughter. It tells them that reckless, stupid conduct that is a felony becomes and then someone dies tragically that's felony murder. Had it been without those charges, they would have been faced with a starker question. Did he intend to kill? Did he know he was going to kill? The state's own evidence said no one would know that this would kill someone. Or was it reckless, stupid, criminal? Well, not murder. And I think without the felony murder charges, they would have returned that involuntary manslaughter verdict. And in terms of your remedy, what you're asking us to do is to remand it for resentencing on involuntary manslaughter. Well, we would love that this court reduced involuntary manslaughter. I'm looking at your opening brief. But we are aware of this court of what people would be doing. So, yes, but our primary argument, our primary relief, is just to reduce involuntary manslaughter. But of course if this court thinks there was sufficient evidence of intentional knowing murder, sufficient, then we ask this court to remand for a new trial on just knowing murder because these improper felony murder charges and vehicle invasion charges affected the jury's outcome. Doesn't this create double jeopardy? I don't know. I don't think so. I don't think so. But you're not sure. Well, if you find that there's insufficient evidence of intentional knowing murder or felony murder, then simple, you just reduce. And that is what we would ask you to do. I guess I was anticipating or just aware of the court defendant's appeal in this case. But, yes, we would like it to be reduced, absolutely. Let's go to the argument that you bring up about the counsel's failure to argue the involuntary manslaughter and instead going for the home run. This defendant has some very experienced trial lawyers representing him. I'm sure he did. I think, though, counsel argued, he brought to the judge's attention reckless conduct, obstruction, involuntary manslaughter, issues instruction and definition. And then he argued over about five pages in the record to the trial court why that was appropriate. And he was making a good argument. This is a case where there was no weapon used. It's a very brief period that we're talking about. Some of these factors are talked about in involuntary manslaughter cases. So he makes these arguments to the court. He succeeds, and the court gives him that instruction. And then he doesn't mention it at all to the jury. I think if he was truly going for all or none, he would have had to argue to the jury why they shouldn't, why they should not only acquit a felon in murder, knowing intentional murder, would it be a victim of an invasion, but all or none would suggest also acquit of involuntary manslaughter. He didn't do that, though. So I don't think, had he done that, then I think we could say, well, he made a strategic decision to go all or none. But I don't think the record shows that here. And what he made, though, a fairly compelling argument to the court. If he had made that same argument to the jury, break it down for them. You've got these different mental states. This is a difficult question for jurors, intent, knowing, reckless, and try to explain how reckless fits these facts better. So I think he had to do that. And I don't think he was going for all or none. So had he done that, had he moved to dismiss these felony murder charges and vehicle invasion charges, I think there's a real chance this jury sees this as frankly what I see it as, which is reckless conduct, inappropriate, wrong conduct, tragically, ended tragically, and Mr. Miller should be held accountable for involuntary manslaughter. If there are any further questions, in your honors, we would ask that you reduce it to involuntary manslaughter primarily, alternatively remand for new trial on knowing murder and involuntary manslaughter. Thank you, your honors. Thank you. I'm being complimented for restraint. That never happens here. Good morning, your honors. Again, Assistant State's Attorney Alan Spalberg on behalf of the people of the state of Illinois. And if I could clarify a couple points, too. As counsel stated and as the court recognized, we have conceded in our brief that the separate conviction for vehicle invasion was improper, improperly brought under the laws of compulsory joinder. However, our concession does not go to the charge of felony murder. And the reason why, and this is exactly why counsel is wrong about this, is that felony murder is not a separate offense under the doctrine of compulsory joinder. It has never been. It has never been. It is a separate theory of the single offense of first degree murder. And it's for that reason that we are allowed to bring a superseding indictment, charging felony murder. We are allowed to ask for felony murder even if we haven't charged it in the indictment at all and just ask for it at the trial. Even if there's no felony? Yes, your honor. And the reason why is because, as Justice Fitzgerald-Smith pointed out, the underlying felony is not an element of the felony murder. And a perfect example is there are times when we cannot legally charge the underlying felony, but we can still charge felony murder. The classic example is in the cold case scenario. There is no statute of limitations for first degree murder, whether it's intentional knowing or felony murder. But there is a statute of limitations for the underlying felony. And if the case is discovered, if the defendant is found, after that time period has expired, we cannot charge the felony murder, the underlying felony, but we can charge the felony murder. A perfect example, which I was personally involved, was the Brown's Chicken case, which I know your honor was on the panel. That was a case where the only charges were the 21 counts of first degree murder, one count of intentional knowing and intentional murder for each of the seven victims, but no additional charges because the statute of limitations had expired. You've got intent all over that record. I mean, you've got people who were shot, people whose throats were slashed. Here you have a guy who's getting into a fit. This is one of the more, this may be unfortunate language, but this is sort of a softball gang case. None of them are even armed. I mean, this is just an old-fashioned fist fight. Your honor, I recognize that, and I think that that's reflected in the sentence that the judge ultimately imposed on the guy. Well, there's no question Judge Hines sentenced him for that on that basis, but it also reflects, I think, the complete absence of any kind of a felony here. I mean, the vehicular invasion you couldn't do technically, and I applaud you for admitting it, but in the absence of that, where's the felony? Well, your honor, I think that the facts definitely do show a vehicular invasion occurred in this case, and had it been charged in the proper time frame, this court would affirm it as it did in the co-defendant's case, Doolin. I don't have any argument with you there. And so if the evidence shows that, then I think there clearly is the felony of vehicular invasion, and then the way the factual scenario worked through, the victim died as a result of this in large parts, and that amounted to a felony murder. It clearly amounted to a felony murder, but in this case, as this Court recognized in the co-defendant's case, this is an intentional violation. What if in the unusual case we reject Justice Fitzgerald's Smith case on this very issue and decide that, in current fact, there is no vehicular intrusion predicate? Then where is our predicate of this? Well, your honor, I think that there's two points that need to be addressed in that scenario. One is, looking at the facts of this case, the evidence that's presented to the jury, is this treated as a finding of guilt on the count three felony murder, or should it be treated as a finding of guilt in count one intentional murder or count two knowing murder? This Court, in the co-defendant's case, looking at the exact same evidence presented to the exact same jury, found it was an intentional murder. In the light and most favorable prosecution, I truly believe that that is the correct rule. The facts for the co-defendant are a little bit different than the facts for this defendant. This defendant has a guy who's trying to get out of the car to engage in the battle, and then he goes into the car and punches him and kicks him, and then the guy starts running around and he goes down with an Erivian. The other one, they're pounding him mercilessly until he's unconscious and bleeding on the pavement. It's a little bit different. The evidence of which defendant was engaging in which action is different in regards to the defendant, but the law of accountability holds them both equally responsible for each other's actions. That's why it was a joint trial with a single jury. There was no severance here because there was no antagonism. The law treated them equally as the same in the same regard. So this jury, the finding that they made for one defendant... Was he sentenced for accountability for anybody else's actions? I'm not clear what you're saying, Your Honor. Maybe I'm not clear either, but he got a 20-year sentence for knowing an intentional murder. That's what Judge Hines said, right? Yes. He didn't get a 20-year sentence for that, and then another sentence for what the other defendant did to the other victim. No, Your Honor, the law is, you know it, right? It doesn't work that way. You are sentenced in the same regard, whether you're a principal or an accomplice, for the offense based upon the charges, based upon the appropriate sentence, based on the facts, and the defendant's individual background is what's happening. That's what Judge Hines did here. He determined that 20 years was the appropriate sentence in this case. So was there any argument below with respect to accountability for the battering? Yes. The closing arguments to both defendants addressed accountability. The closing arguments by the opening argument by the prosecutor and the rebuttal argument specifically addressed the law of accountability and identified that they had to be held responsible for each other's actions equally because that's the way the law of accountability works. The cases that counsel cites, the Quigley, the Williams, the Hunter, those are compulsory joinder cases, and those cases involve different offenses. The case primarily that he cites is Quigley, involves a charge that was pending for misdemeanor DUI that was upgraded nearly a year later to felony aggravated DUI. So it was an entirely different charge with different procedural requirements, different means of charging, different statute of limitations, different discovery rules. Everything was different about that. It was an entirely different and distinct charge. There was no history of treating aggravated DUI and felony and misdemeanor DUI as the same. Hunter was the same way. It was possession, constructive possessions of two different things, a gun and drugs. And Williams dealt with murder, a late added murder charge, when the defendant was charged originally with conspiracy, with contributing to the delinquency of a minor. Two completely different charges. They factually, they were similar, absolutely, but the offenses were distinct. This case, under the law, the binding Illinois Supreme Court case law, from Allen, from Rassochocki, from Maxwell, all hold that felony murder is the same offense. It is not a distinct offense from first degree murder. And so that's why in Allen in particular, the state which had only charged intentional and known murder, not any felony at all, anywhere in the charging instrument, an opening statement brought up felony murder. And the defense objected, didn't object to that point. The jury is instructed on felony murder. But when it goes to the Illinois Supreme Court, the Illinois Supreme Court said, there's no problem here. It's a single offense. You are perfectly entitled to do this, even though there was no prior charge, even though there was no prior felony as a predicate. I think we know where you're coming from. Let's switch topics for a moment and talk about causation. The causation testimony by Dr. Calicar, if I'm pronouncing it correctly, was so skinny as to be legally anorectic, in my opinion. Defend for me how her testimony could establish that the cause of death was related to this guy getting punched or kicked. Well, she expressly stated in her opinion, which was not really challenged, although the defense offered a separate expert, that the injuries were a contributing factor to the death. That was her express testimony. He had seven abrasions above his body. Yes. And he died of having cardiomegaly. He's a young man, he had an enlarged heart. He had an arrhythmia due to the stress caused by the altercation. Yes. If they had come in driving too fast and almost hit him in a car pulling in to get gas, he could have died from that same kind of stress. Could have, except the stress in this case was induced by the defendant and his co-defendant's actions in attacking them. But wasn't he also a part of, or didn't he have some participation in retaliation? Well, he was responding to the attack that was brought upon by the defendant and the co-defendant, too. There's no question, there's no dispute at any point, that the defendant was the initial aggressor, instigator in this by starting to attack the victim in the case. Yes, yes, the victim was responding and it was turning into a larger melee, absolutely. But the defendant and his co-defendant are the ones who started the process, set the chain of reaction going, and inflicted bodily harm upon the victim, knowingly inflicted, intentionally inflicted bodily harm, great bodily harm upon the victim. That was their goal. And so when the victim died, as the court found in Newland He knowingly did it. he punched him and he kicked him and he wound up with a couple of contusions and he fell to the ground as a result of an arrhythmia. I don't see how the punches and the kick, the punch and the kick, I think that's one of each, in any way contributed to causing his death. There was an argument to be made to the jury, which it was made and was rejected. And this court affirmed that finding in the dual case, on that exact point. I'd like to just get to the, in directly related to this, is the argument about involuntary manslaughter. Yes, absolutely. Counsel's right. The defense attorney argued and requested for an involuntary manslaughter instruction at the jury instruction conference, over the State's objection, saying that we didn't believe there was sufficient evidence to do it. The judge granted. But then it wasn't mentioned during the closing arguments. And the reason why it wasn't mentioned during the closing arguments was a legitimate strategic choice. And I know counsel won't, it doesn't see the strategy, but anybody who's ever done jury trial work understands exactly what's happening. You want to give the jury an option. You want them to say, in this case, given the facts of this case, wait a minute, maybe this isn't really a murder, maybe it's something else, maybe it's involuntary manslaughter. But to have argued that would have required the defense attorney to get out there and say that his client actually did that, and what he did, he did it recklessly. But his argument wasn't that. If you go to read Mr. McMahon's argument, the assistant public defender's argument, he was very clear what he was doing. He was parsing out the video point by point by point. He stressed from the very beginning that this was something that happened entirely in a minute and a half, and it was so fast, and you can't really see everything from watching the video, and that there was no kick, there was no intrusion into the car, there was nothing. You didn't see his client, the defendant in this case, do anything. And so what he was trying to do was separate himself from the co-defendant dueling and getting there. But if he had argued recklessness, he would have undermined that theory. It was a strong and legitimate theory to make to a jury, understanding how juries work, because juries, once they go back in the room, they want to talk and they want to find compromise if they can, and that's what he was hoping the involuntary manslaughter was. I don't think you have any issue with us on that argument. That's why I don't think you can find an effective assistant to counsel here because of the strong presumption of strategic choices and a legitimate one based on this record. Okay, now let's say we go along with you on that. What about the other ineffective? Isn't it, in hindsight at least, ineffective representation for counsel to not have moved for dismissal of that which you say was untimely brought? Well, Your Honor, I feel like any prejudice would have been solved by our concession and our request that this Court vacate the vehicular invasion conviction. And based upon Allen and Rosashaki and Maxwell, a motion to dismiss that count would not have resulted in a motion to dismiss count three, the felony murder count. It would not have been a basis to do so. No, but then the jury wouldn't have been instructed on vehicular invasion and felony murder. Then the jury would only take the case as knowing an intentional murder. No, they would have been instructed on felony murder still because the felony murder count would have existed because we would have been allowed to ask for it. And although the jury doesn't have to be instructed on the elements of vehicular invasion as a predicate felony, they can be. Okay, all right. So I disagree with that. I feel like the only prejudice that the defendant could have suffered in this case based upon the alleged ineffectiveness was the existence of a separate conviction on vehicular invasion, which we've conceded was improper. And so for that reason, we would ask this Court to follow its own ruling in Doolin and in Wales and to affirm the defendant's conviction for first degree murder, affirm his conviction for aggravated battery, and to vacate his conviction for aggravated battery. What about what he keeps bringing up about the kick versus the punch and the separate? Your Honor, that's a question of fact for the trial effect that this Court has to review in the light most favorable to the prosecution. That was clearly argued to the jury, discussed, and what the jury found was that there was a sufficient link between the defendant's conduct and his co-defendant's conduct in the victim's death, in the foreseeable nature of it. And that's what this Court held in Doolin. So thank you. You can talk to me. They're having a conversation. Okay. I think we see how important felony murder is to the State's theory. This isn't an intent and knowing case. Every man or almost every man, my age or less, has been in this situation. And if one of us had died of an unknown dark heart defect, we'd want that person punished, but no one would think it's murder, intentional murder, knowing murder. So felony murder is the case. That's what the jury. What about his argument about accountability, though? You've got the other guy who's pummeling him and knocked him unconscious and he's bleeding. So that wasn't committed against Abdallah. That wasn't committed against Mr. Rawat, the aggravated battery. Right. Mr. Doolin did throw a punch, one punch at Mr. Abdallah, and the jury could find that he made contact. But after that, Mr. Miller was running away. So I don't think the prejudice, even if you think felony murder charges, and what I'm hearing is felony murder charges is based on a predicate that exists sometimes and doesn't exist at other times. Vehicular invasion, we know, should not have been given to the jury. They got a verdict for it. They would never have gotten that verdict for him. They wouldn't have been focused on felony murder. So even if you just think that charge should have been dismissed, I think that's what the prejudice is. Why wouldn't they be focused on felony murder? The state wouldn't be jumping up and down about felony murder. They would be. They would be. So even if, oh, I see what you're saying here. Well, they would be, but they wouldn't have to render that verdict on vehicular invasion, which they had to do because of ineffectiveness here. But I would like to say also. They could have found guilty of involuntary manslaughter, even if the lawyer didn't argue it, right? That's true, Your Honor. That's true. But, I mean, that's why I think felony murder really got in the way of that. I do want to say DUI is one offense in Quigley. It's just the same as here. I really think this court should follow the compulsory jointer cases. And then, Your Honor, Justice Couch, I think you asked what if there's no intrusion. And I think it's an important question. The jury could have found that Mr. Miller, his foot entered slightly. But it was incidental. It wasn't the purpose of this. The court actually at trial at one point said, you know, this was a fight where any intrusion was incidental. So I think that supports our argument in Issue 2, that felony murder is based here on a felony that is inherent in and that rose out of the murder itself. So I just think felony murder is this case. I think a jury without those charges sees this for what we think it is, involuntary manslaughter. Is there no further questions? Thank you, Your Honor. Thank you. It was well-argued and interesting. A little different case, as one of you said, no gun for a change. Well, it's a perfect example of, you know, the meaningfulness of oral argument by skilled counsel. So thank you very much. We have a different panel for the next case, so we'll be back.